DANIEL YORDY, Appellee, v. MARSHALL COUNTY, Appellant.

1. **Municipal Corporations:** DEFECTIVE BRIDGE: EXTRAORDINARY USE: NEGLIGENCE. In an action against a county for damages sustained through the breaking down of a bridge, the question whether the use of the bridge by the plaintiff was so negligent or improper as to prevent a recovery is for the jury to determine.

2. ———: ———: DECLARATIONS OF AGENTS. Evidence of the declarations of a member of the board of supervisors in such case; admitting knowledge that the bridge was unsafe, made after said accident, and when not engaged in any official work or employment for the county, *held*, not competent to show knowledge on the part of the county that the bridge was defective.

*Appeal from Marshall District Court.*—HON. J. L. STEVENS, Judge.

SATURDAY, OCTOBER 15, 1892.

ACTION at law to recover damages for the breaking down of a county bridge, by which a steam engine, a threshing machine and a span of horses were injured. There was a trial by jury, which resulted in a verdict and judgment for the plaintiff. The defendant appeals. *Reversed.*

*J. L. Carney*, County Attorney, for appellant.

*Volney Kent*, for appellee.

ROTHROCK, J.—I. This is the second appeal in this case. See 80 Iowa, 405. The cause was reversed on
1. MUNICIPAL corporations: defective bridge: extraordinary use: negligence. the former appeal, because the court ordered a verdict to be returned for the defendant while the plaintiff was introducing his evidence, and before he had rested.

his case, on the ground that it appeared from the plaintiff's own testimony that there could be no recovery.   It was claimed in that appeal that, in constructing and maintaining bridges, the county is not bound to anticipate that they will be used in the manner in which the evidence showed beyond question the plaintiff was using this one.   In determining this question we then used the following language:   "In constructing and maintaining its bridges the county board is not required to assume that they will be used in an unusual and extraordinary manner, either by crossing at great speed or by passage of a large weight.   It is not required to so build or maintain its bridges as to protect against injury resulting from unusual and extraordinary use.   Its liability stops with constructing and maintaining its bridges so as to protect against injury by a reasonable, proper, and probable use thereof in view of the circumstances, such as the extent, kind, and nature of the travel and business on the road of which it forms a part.   *   *   *   Should the court have said, as a matter of law, that the use which the plaintiff was making of the bridge was unusual and extraordinary, and such as the defendant's board was not bound to anticipate?   Such machines are in common use, and of necessity are frequently moved along the highways and across the bridges of the county. True, their passage is not so frequent as vehicles in more common use, but the same is true of four and six horse teams, and yet a court would not declare as a matter of law that the passage of such was not to be anticipated."   We have quoted from the former opinion quite at length, because it is now contended that the evidence is not sufficient to authorize a verdict for the plaintiff.   The evidence is substantially the same as on the former trial, so far as the former trial was allowed to proceed; and, following the rule laid down in the former appeal, that the question as to whether

·the use of the bridge as it was used by the plaintiff was such a negligent or improper use as to prevent a recovery was for the jury to determine, we must now hold that the finding of the jury cannot be disturbed as being without support in the evidence.

II. It appears that one Benedict was a member of the board of supervisors at the time the accident happened. The plaintiff introduced in evidence

2. ——: ——: declarations of agents. the deposition of one Backer. In the course of his examination the following testimony was elicited: "*Q.* What, if anything, did Mr. Benedict say about the bridge having been condemned by the supervisors previous to the accident? (Defendant objects to the question because it is not the best evidence, and is only hearsay. Objection overruled, and defendant excepts.) *A.* He said the bridge had been condemned by the board of supervisors, and that the board had ordered Butler to put up notices that the bridge had been condemned, and to prop the bridge, and he had neglected to do so. (Defendant moves to strike the answer out as being incompetent. Motion denied, and defendant excepts.)" Substantially the same testimony was afterwards given by the deposition of another witness, to which no objection was made; but before the close of the plaintiff's evidence the record showed that the defendant made the following motion:

"Defendant moves to exclude from the jury the evidence in the two depositions of the declarations of William Benedict, a member of the board of supervisors, tending to show knowledge on the part of the county that the bridge was condemned, on the ground that the testimony should be introduced by the testimony of Mr. Benedict, and not by way of admission. An officer cannot make an admission after the fact, or an admission where he has not power or authority to act absolutely for the whole corporation, and it is not a part of the *res gestæ.*"

The court did not then make a ruling on the motion, but held it for further consideration. The defendant, in its requests to charge the jury, again presented the question in the following language:

"The plaintiff in this case must establish that the defendant, by its board of supervisors, knew, or had reason to know, before the accident, that said bridge was unsafe; and the declaration of a member of the board, when not sitting as such member, admitting knowledge that the bridge was unsafe, is not competent evidence against the county, and does not bind it."

The court refused to give this instruction, and thereby submitted the evidence to the jury for its consideration. It appears that the alleged declarations of Benedict were made after the accident, and it does not appear that when he made the declarations he was engaged in any official work or employment for the county. Under these circumstances, the testimony as to his declarations was not competent evidence. He was an agent of the county, and his declaration was in no way connected with, nor a part of, the *res gestæ*. It was a mere narration of a past event. That it was not admissible as evidence, see *Sweatland v. Ill. & Miss. Telegraph Co.*, 27 Iowa, 433; *Treadway v, S. C. & St. P. Railway Co.*, 40 Iowa, 526; *McPherrin v. Jennings*, 66 Iowa, 622; *Verry v. B., C. R. & M. Railway Co.*, 47 Iowa, 549; *Luby v. Hudson River Railway Co.*, 17 N. Y. 131. It is to be remembered that the declarations in question were not made in the presence of any other member of the board, much less at a meeting of the board. We have looked into the case fully to see if it cannot be said that the admission of this evidence and its submission to the jury were without prejudice. Our conclusion is that we cannot so hold. So far as the outward appearance of the bridge was concerned, it appeared to be sound. The plaintiff so thought when he drove his engine and threshing outfit upon it, for he

stopped and examined it before driving on it. It was therefore a most important question to determine whether the county was negligent in not discovering that certain timbers in the bridge were decayed.

III. Several other questions are presented in argument, which we do not think demand separate consideration. But, in view of a new trial, we think care should be taken to allow no expert testimony to be introduced without an affirmative and explicit showing that the witness is qualified as an expert to give an opinion upon the subject inquired about; and while we do not hold that it was error to refuse the instructions to the jury requested by the defendant, yet we think the jury should have been plainly and explicitly instructed to inquire and determine whether the plaintiff was or was not negligent in driving upon the bridge in question with his whole threshing outfit coupled together, and thus placing a weight of about ten thousand pounds on the bridge at one time, when, by uncoupling the different parts, and passing them over separately, the passage could have been made in safety.

For the error in refusing to give the instruction above set out, the judgment is REVERSED.